MRS. J. E. RAINS, COUNTY TREASURER, ET AL V. MERCANTILE NATIONAL BANK OF DALLAS.

No. A-530. Decided January 23, 1946.
(191 S. W., 2d Series, 850.)

468

*John J. Watts*, of Crane, and *Richard Critz*, of Austin, for petitioners, Mrs. Rains and Upton County.

The claims in question not having been presented to the Commissioners Court of Upton County for allowance, before the filing of the suit, the lower courts had no jurisdiction to enter any judgment against the county or to order the payment of any interest on the warrants. Leech v. Wilson County, 62 Texas 331; Stevens v. Jim Wells County, 32 S. W. (2d) 889; Ehlinger, County Judge, v. Clark, 117 Texas 547, 8 S. W. (2d) 666.

*Collins, Jackson, Snodgrass & Blanks, and Scott Snodgrass,* all of San Angelo, *John D. McCall, Clarence E. Crowe* and *Millard Parkhurst,* all of Dallas, for respondents, Mercantile National Bank at Dallas.

The warrants were prima facie valid, and the Court of Civil Appeals erred in reforming the trial court's judgment so as to eliminate therefrom the recovery of the stipulated four per cent interest on the general warrant funds. City of San Antonio v. Cullen, 168 S. W. (2d) 882; City of Belton v. Harris Trust & Saving Bank, 283 S. W. 164; Davis v. Burney, 58 Texas 364, Lasater v. Lopez, 217 S. W. 373.

MR. JUSTICE SLATTON delivered the opinion of the Court.

This suit was brought by Mercantile National Bank at Dallas against Upton County and the county treasurer of Upton County to recover the aggregate sum of approximately 1100 warrants drawn on three designated funds of Upton County during the year 1942, viz: general fund, $32,352.96; Officers' salary fund, $10,212.74; road and bridge fund, $21,835.94. The county defended the suit upon the theory that the bank acquired the warrants in virtue of a contract between Upton County and Rauscher-Pierce Company of Dallas, whereby the company agreed to purchase warrants to the extent of $90,000.00 issued by Up-

ton County during the year 1942, and that the county failed to provide for a levy of taxes sufficient to pay said indebtedness, in violation of Section 7 of Article XI of the State Constitution. Some of the warrants were said to be invalid because issued to officers of the county at a time when the officers were indebted to Upon County, thereby being in violation of Section 7 of Article 3912e Vernon's Annotated Civil Statutes. A special issue verdict was returned by the jury as follows:

"Special issue No. 1. Do you find * * * Mercantile National Bank of Dallas is the owner and holder of the warrants herein sued on?
"A. Yes.

"Special Issue No. 2. Do you find * * * that the reasonably expected current revenue of Upton County for the year 1942 was not a sum amounting to as much as the sum of claims representing the ordinary expenses of the county for that year?
"Answer: It was.

"Special Issue No. 3. Do you find * * * that in purchasing the warrants herein sued upon the plaintiff, Mercantile National Bank at Dallas, relied upon the contract between Rauscher-Pierce & Company and Upton County, executed April 13, 1942?
"Answer: Yes.

"Special Issue No. 4: Do you find * * * that the defendant herein, Upton County, acting by and through its commissioners court and county officers, is not now estopped from denying liability on the warrants herein sued upon?
"Answer: The County is estopped.

"Special Issue No. 5: Do you find * * * that Mercantile National Bank of Dallas and Upton County, acting through its officials, reasonably expected that the warrants herein sued upon were to be paid out of the County's current revenues for 1942?
"Answer: Yes.

"Special Issue No. 6: Do you find * * * that Mercantile National Bank at Dallas, in purchasing the warrants herein sued upon, at the time of their purchase relied upon the acts and conduct of Upton County, acting through its commissioners court and officials as to the validity of such warrants?
"Answer: Yes."

■ The warrants were issued during the year 1942, up to and including November 1, 1942. The warrants were issued to various persons and apparently for current operating expenses of Upton County during the year in which they were issued. No

due date is specified, but all were registered in accordance with law. It appears on the face of each warrant that a claim for the amount has been allowed by the commissioners court of Upton County, and at a designated term of said court. The warrants were duly endorsed by the payee. The bank is the holder of all of them for value as assignee. All of the warrants were introduced in evidence. Thus the bank made a prima facie case for the total amount of the aggregate number of warrants. This must be true, for the reason that the warrants were issued by the officers of Upton County. The officials will be presumed to have done their duty. This presumption will prevail until it appears to the contrary. The warrants in suit are merely orders upon the county treasurer of Upton County to pay out of the funds of said county for county purposes the stated amounts not otherwise appropriated. Being registered according to law, these warrants are payable, not on any specified date, but when the money is available in the respective funds upon which they are drawn. Thus it is seen that the bank as assignee of the warrants is entitled to collect for them unless the county has shown them to be illegal.

■ The county contends that the bank, not having alleged and proved presentation of the claims asserted in this suit to the commissioners court of Upton County in accordance with Article 1573 before filing suit in the district court, the lower courts had no jurisdiction to enter judgment against the county. This point is first presented in the Supreme Court. The contention cannot be sustained. First, the same was not presented to the lower courts. Second, the claims asserted in this action show on their face to have been presented to and approved by the commissioners court of Upton County.

The county contends, through its second to eighth points of error, that the warrants in suit are debts within the meaning of Section 7 of Article XI of the Constitution, and since no tax was levied with which to pay the same, are void. To sustain the county's position under these points a contract between the county and Rauscher-Pierce & Company of Dallas is in evidence. It was dated on the 13th day of April, 1942. In short, it provided, among other things, for the issuance and sale of scrip by the county during the year 1942 and the purchase of same to a specified amount by the Pierce Company, provided the same was found to have been legally issued by the company's attorney. It further provided under certain contingencies that the scrip so purchased should be refunded in accordance with the bond and warrant law of 1931. The county offered in evidence its budget for 1942, which had been made and certified to in August, 1941.

The total assessed valuation of the property for the year 1941 was in excess of $22,000,000.00. It is in proof that for the year 1940 the valuation was slightly in excess of $11,000,000.00. The budget for 1942 was twice amended. The second amendment was a short time prior to the date of the contract above mentioned. It reduced the expenditures expected to be made for several funds. No doubt it was adopted at the suggestion of an attorney for the Pierce Company. The budget for 1942, as amended, may be summarized as follows: General fund, anticipated revenue, $59,250.00; anticipated disbursements $57,554.96; officers' salary fund $24,529.58; anticipated disbursements $23,660.00; road and bridge fund, anticipated revenues, $56,000.00, anticipated disbursements $54,149.48. In the budget, as adopted before the two amendments, the expenditures exceeded estimated receipts in a sum upwards of $12,000.00. Included within the anticipated expenditures was unpaid scrip for the year 1941 as follows: $14,411.45, general fund; $16,559.49, road and bridge fund.

The budget showed revenue of $12,000.00 from the collection of delinquent taxes was anticipated for the year 1942.

The county argues that the contract between the county and Rauscher-Pierce & Company for the issuance and sale of warrants taken in connection with the execessive valuations of the taxable property for the year involved show facts sufficient to prove the warrants issued during the year 1942 could not be reasonably expected to be paid out of current revenue of the county for the year.

There is no showing that the bank acquired the warrants in suit from the various holders of the same in virtue of the Pierce-Upton County contract. Its validity is not before us for review. The aggregate amount of the warrants in suit is slightly in excess of $64,000.00. Regardless of the claimed excess valuation of the property for taxation of Upton County for the taxable year involved, the anticipated revenues would greatly exceed the amount of the warrants in suit, even though the valuation of the county be reduced to that of the previous year. In 1939 the valuation of the county was slightly in excess of $11,-000,000.00. The general fund and the road and bridge fund for that year collected $73,395.41. This is shown by the county's budget. It is in evidence that beginning with January 1, 1942, the funds on which the warrants in suit are drawn were overdrawn by outstanding warrants, but no showing is made whether the outstanding warrants were registered so as to be payable prior to the warrants in suit. Hidalgo County et al v. Hay-

nie, 67 S. W. (2d) 409.4, loc. cit. pp. 410-411. The evidence shows that collections of taxes were sufficient to have paid these warrants. Upton County had, at the time of the trial, funds on hand sufficient for their payment. Under the record as presented we hold that none of the warrants are shown to be a debt within the meaning of the clause of the Constitution. The county and those dealing with it could reasonably anticipate that . money would be available out of current revenues with which to pay all of the warrants sued on. Wilkinson v. Franklin County, 94 S. W. (2d) 1190, writ refused; McNeil v. City of Waco, 89 Texas 83, 33 S. W. 22; Stevenson v. Blake, 113 S. W. (2d) 525. The purpose of the clause of the Constitution is a salutary one, but it was not intended to be used as a device to defeat just obligations of the county which have been created in accordance with law. Colonial Trust Company v. Hill County, 294 S. W. 517.

■ The county sought cancellation of certain warrants totaling the sum of $1072.49 upon the theory that the same were drawn for an illegal purpose. It is not shown in the briefs whether the warrants sought to be cancelled are some of those in suit. However, according to the statement of the county, the warrants were drawn in favor of the manager of McCamey Airport. Expenditures like these are authorized by Article 1269h, Vernon's Annotated Civil Statutes; Defense Guard by Article 5891a; Sheep Show by Article 2372d. The court did not submit any issue as to these warrants and the county requested no issue concerning them. It does not clearly appear for what consideration these warrants were issued. We are of the opinion that Upton County did not show sufficient facts to establish the illegality of the warrants sought to be cancelled.

■ The county also sought cancellation of warrants drawn on the officers' salary fund totaling $10,510.24. It does not definitely appear whether these are all included within the warrants sued on. The ground upon which cancellation is sought is stated to be that the officers, at the time of the issuance of the warrants, were indebted to the county, and that under Section 7 of Article 3912e the warrants are void. No specific issue was submitted to the jury concerning these warrants. The county requested none. There is evidence in the record tending to show during the year 1941 various claimed illegal payment of moneys to the officers of Upton County for that year. The county filed suit against several of its officers to whom the warrants in question were issued. Pleas in abatement were sustained to the suits on the grounds that the officers sued had either settled or paid the claims. It may be inferred from the record that settlements were made subsequent to the date the warrants which are now sought

to be cancelled were issued. Section 7 of Article 3912e provides in part:

"No warrant shall be drawn on said fund or funds in favor of any person indebted to the State, county or to said fund or in favor of his agent or assignee until such debt is paid."

Evidently, the jury considered the above facts and decided the issue of estoppel in favor of the bank against the county. The paramount reason for the statute which forbids the issuance of a warrant to an officer while he is indebted to the county is to insure whatever indebtedness is due by the officer will be paid. If it can be said under the proof that at the time of the issuance of the various warrants in this suit to the various officers the officers were indebted to the county, the subsequent acts of the county in receiving payment for said indebtedness would, in our opinion, preclude the county from cancelling an otherwise valid salary warrant, whether it be in the hands of the officer or in the hands of the officer's assignee.

We are of the opinion that points of error presented by the county must be overruled.

■ The bank complains of the action of the Court of Civil Appeals in reforming the judgment so as to deny it interest on warrants drawn on the general fund from the date of the warrants to the date of the judgment of the trial court. The trial court gave judgment for interest form the date of each warrant at the rate of 4% per annum to the date of judgment. The Court of Civil Appeals reversed and rendered judgment denying this amount. As we have stated, the warrants provide on their face "with interest at 4% per annum from date until paid." Since the decisions of San Patrico County v. McClane and Davis v. Burney, 58 Texas 243 and 364, it is settled that a county has the power to issue warrants providing for the payment of interest thereon where the parties had contracted for that kind of paper. The question presented in the present case is, Does the quoted provision on the face of the warrants show such a contract for the payment of interest between the county and the various payees in the warrants? The following decisions allowed interest on county indebtedness: San Patricio County v. McClane, 58 Texas 243, Davis v. Burney, 58 Texas 364; Cass County v. Wilbarger County, 60 S. W. 988; Lasater v. Lopez, 110 Texas 179, 217 S. W. 373; Bexar County v. Mann, 157 S. W. (2d) 134; Tyler v. Shelby County, 47 Fed. (2d) 103. But those cases are where the contract between the county and the parties creating the indebtedness so provided. It may be inferred

from the record before us that county officials of Upton County had adopted the policy of making all of its current operating warrants bear 4% interest, but no such contract appears in evidence. As we have stated, the county has the power to provide for the payment of interest on a warrant drawn for current operating expenses where the contract creating the indebtedness so provides. Cases cited, supra. These warrants were issued between January 1, 1942, and November 1, 1942. Apparently most all of them were issued for current operating expenses. If there was no specific contract for the payment of interest at the time the agreement was made out of which the claim was allowed and the warrant issued, the allowance of interest by the county when the warrant was dated would be violative of Section 53 of Article III of the State Constitution. We have no doubt as to the invalidity of such a contract between the county and its officers because their salaries are fixed by statute. To allow interest thereon from the date of the warrant would certainly be prohibited by the mentioned clause of the Constitution. As was noted by the Honorable Court of Civil Appeals, the fact that warrants become payable as of the time of registration and not of the date of the warrant further complicates the question before us. County claims are paid, not according to date of the warrant, but according to the date of the warrant's registration. Article 1625 et seq., Vernon's Annotated Civil Statutes, 1925. In the absence of a showing of a specific contract to pay interest, duly agreed to between the parties at the time the contract is made or before the services are performed or the goods are furnished to the county, we are of opinion that the county has not the authority to allow interest thereon at and from the date of approving the claim for such services or merchandise. We think this conclusion is compelled in virtue of Section 53 of Article III of the Constitution. We are therefore of the opinion that the Honorable Court of Civil Appeals correctly denied this item of interest on the general fund warrants.

The judgment of the Court of Civil Appeals, which reformed and affirmed the judgment of the trial court, is affirmed.

Opinion delivered January 23, 1946.