ALICIA S. McCLELLAN ET AL v. H. P. GUERRA.

No. A-3776. Decided May 6, 1953.
Rehearing overruled June 3, 1953.
(258 S. W. 2d Series 72)

The judgment of the Court of Civil Appeals is affirmed. Justices Calvert, Brewster and Griffin dissenting.

*A. J. Vale,* of Rio Grande City, *Raymond, Algee, Alvarado, Kazen & Woods,* of Laredo, and *L. Hamilton Lowe,* of Austin, for petitioner.

The Court of Civil Appeals erred in holding that monies derived from county taxes levied during the year 1951 are not current revenues of the county for the year 1951. Stevenson v. Blake, 131 Texas 103, 113 S.W. 2d 525; Howard v. Henderson

County, Texas Civ. App., 116 S.W. 2d 479; McNeal v. City of Waco, 89 Texas 83, 33 S.W. 322.

*Gerald Weatherly,* of San Antonio, for respondent.

The county taxes of Starr county, collected during October, November and December, 1951, as the result of a levy made after the hearing of the county budget for 1952, are not "current revenues for the year 1951," and the Court of Civil Appeals was right in granting its temporary injunction to the effect that these taxes may not be used to pay 1951 current expenses. Brazeale v. Strength, 196 S.W. 247; Ault v. Hill County, 102 Texas 335, 116 S.W. 359; Cooley's Constitution Lim., 5th Ed. p. 83.

MR. JUSTICE SMITH delivered the opinion of the Court.

Respondent, H. P. Guerra, plaintiff below, filed this suit against the petitioners, alleging that certain expenditures of county funds were being made in contravention of the Uniform Budget Law, Articles 689a-9 - 689a-12, Vernon's Annotated Civil Statutes. Respondent's prayer for a temporary injunction was denied. On appeal to the Court of Civil Appeals, the order denying the temporary injunction was reversed with instructions to the trial court to issue a temporary injunction restraining petitioners from paying out sums of money not provided for by the 1951 budget of Starr County adopted on September 11, 1950.

The original order refusing the temporary injunction was signed on August 15, 1951. The trial court had before it the original budget adopted September 11, 1950, and an amendment to the budget adopted January 11, 1951. The court did not have before it an amendment to the budget which was adopted on August 16, 1951. The Court of Civil Appeals refused to consider the latter amendment for the reason that it was not a part of the record, but instructed the trial court to grant the temporary injunction "without prejudice to the right of appellees (petitioners) to urge the legality of the August 16, 1951 order amending the budget as the basis of a motion to dissolve the temporary injunction, or urge the same as a defense to appellants' suit upon a trial of the merits." 243 S. W. 2d 715.

On November 26, 1951, the trial court granted a temporary injunction "commanding said defendant's and each of them to desist and refrain, until final trial and judgment herein, from paying out sums of money for 1951 obligations and indebted-

ness which are not provided for by the 1951 budget of Starr County, adopted on September 11, 1950. This order is entered without prejudice to the right of said defendants to urge the legality of the August 16, 1951 order amending the budget as a basis of a motion to dissolve this temporary injunction or urge the same as a defense to plaintiff's suit upon a trial of the merits of this cause". On November 26, 1951, petitioners filed a motion to dissolve the temporary injunction alleging in part: "On August 16, 1951, the Commissioners' Court of Starr County, Texas, acting in accordance with the provisions of law, duly and properly amended the budget of said county for the year 1951, and said amended budget authorizes the payment of all salaries and other items of expense involved in this suit and there is now no legal justification for any injunction against these defendants within the pleadings before the court in this cause * * *".

On November 30, 1951, the motion to dissolve the temporary injunction was granted, and on appeal, the Court of Civil Appeals reversed the trial court and granted an injunction that "during the pendency of this suit, the appellees and each of them are hereby enjoined from paying out any sums of money upon 1951 obligations of Starr County not provided for in the original budget for the year 1951, adopted on the 11th day of September 1950 * * *". A dissenting opinion was filed by Chief Justice W. O. Murray, 250 S.W. 2d 241. This Court has granted a writ of error.

It is apparent that the trial court dissolved the temporary injunction on the theory advanced by petitioners that "tax monies collected as a result of the levy of county taxes for the year 1951, irrespective of when they are collected, constitute 'current revenues' for the year 1951". Respondent contends that the Constitution and budget and tax laws forbid petitioners creating even current expenses in anticipation of the ad valorem taxes to be collected in October, November and December, 1951, and that these taxes are to be used for 1952 operations and are not "current revenues" for the year 1951.

Article XI, Section 7, Texas Constitution, provides in part that

"* * * no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made at the time of creating the same, for levying and collecting a sufficient

tax to pay the interest thereon and provide at least two per cent as a sinking fund; * * *"

Article 689a-9, Vernon's Annotated Civil Statutes, provides that the county judge of each county shall serve as budget officer for the Commissioners' Court, and shall, during the month of July of each year, assisted by the County Auditor or by the County Clerk, prepare a budget to cover all proposed expenditures of the county government for the succeeding year, and Article 689a-9 further provides that

"* * * such budget shall be carefully itemized so as to make as clear a comparison as practicable between expenditures included in the proposed budget and actual expenditures for the same or similar purposes for the preceding year. The budget must also be so prepared as to show as definitely as possible each of the various projects for which appropriations are set up in the budget, and the estimated amount of money carried in the budget for each of such projects. The budget shall also contain a complete financial statement of the county, showing all outstanding obligations of the county, the cash on hand to the credit of each and every fund of the county government, the funds received from all sources during the previous year, the funds available from all sources during the ensuing year, the estimated revenues available to cover the proposed budget and the estimated rate of tax which will be required."

Article 689a-10, Vernon's Annotated Civil Statutes reads:

"When the County Judge has completed the budget for the county, a copy of it shall be filed with the clerk of the County Court, and it shall be available for the inspection of any taxpayer."

Article 689a-11 reads as follows:

"The Commissioners' Court in each county shall each year provide for a public hearing on the county budget—which hearing shall take place on some date to be named by the Commissioners' Court subsequent to August 15th and prior to the levy of taxes by said Commissioners' Court. Public notice shall be given that on said date of hearing the budget as prepared by the County Judge will be considered by the Commissioners' Court. Said notice shall name the hour, the date and the place where the hearing shall be conducted. Any taxpayer of such county shall have the right to be present and participate in said

hearing. At the conclusion of the hearing, the budget as prepared by the County Judge shall be acted upon by the Commissioners' Court. The Court shall have authority to make such changes in the budget as in their judgment the law warrants and the interest of the taxpayers demand. When the budget has been finally approved by the Commissioners' Court, the budget, as approved by the Court shall be filed with the Clerk of the County Court, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the Court. Except that emergency expenditures, in case of grave public necessity, to meet unusual and unforeseen conditions which could not, by reasonably diligent thought and attention, have been included in the original budget, may from time to time be authorized by the Court as amendments to the original budget. In all cases where such amendments to the original budget is made, a copy of the order of the Court amending the budget shall be filed with the Clerk of the County Court, and attached to the budget originally adopted * * *."

Article 689a-12 provides:

"In the preparation of the budget, the County Judge shall have authority to require any officer of the county to furnish such information as may be necessary for the County Judge to have in order that the budget covering the expenditures of the county may be properly prepared."

It will be noted that the Legislature was very careful to provide that a grave public necessity must exist to authorize an amendment of the budget once it is adopted. The amendment recites that an emergency existed and then proceeds to raise the estimated general fund current ad valorem tax receipts from $48,000.00 for the year 1951 to $119,250.00. This change appears at page 14 of the amendment. The original budget adopted September 11, 1950, estimated the assessed valuation of the county to be $22,000,000.00, and at page 9 of the original budget the tax rate to care for the general fund is listed at 25 cents per $100.00 of the assessed valuation. The amended budget of August 16, 1951, does not make any change in either of these items. Therefore, it is clear that the estimated receipts of $119,250.00 would permit a total unauthorized expenditure of $71,250.00. The budget was amended so as to authorize an expenditure of approximately $42,000.00 in excess of the estimated expenditures contained in the original budget.

The record further clearly reflects that the item of "estimated receipts of $119,250.00" inserted in the amended budget of August 16, 1951, was based on the assessed valuation and tax levy for the year 1952, and not for the year 1951.

The County Auditor testified:

"Q. On your examination by Mr. Vale you testified that,— with reference to amended page 14 of the Amended Budget,— that the items of 1951 for Current and Ad Valorem Taxes of $119,250 took into consideration or was an estimate of 90% collections based on that 50c levy for the General Fund?

"A. Yes, sir.

* * *

"Q. That order was entered just after the budget for 1952 was adopted, was it not?

"A. I think so.

"Q. And so you say that is the method by which you arrived at the estimate of $119,250 for the current Ad Valorem Taxes?

"A. Yes, sir.

"Q. And you put that in the Amended Budget of 1951 as the budget estimate for 1951?

"A. Yes, sir.

"Q. And that was an estimate of 90% of the taxes you expected to collect under that 50c levy and based, I believe you said, on twenty-six and a half million dollars valuation?

"A. Yes, sir.

* * * * * * *

"Q. I now show you what has been marked for identification as Plaintiff's Exhibit Number 5, which is a copy of the budget of Starr County, Texas, for the year 1952 and which I just obtained from your office downstairs, and it purports to have been filed in your office on September 17, 1951. I wish you would look at that budget and see if that is the copy which has been filed in your office?

"A. Yes, sir, that is right."

Exhibit Number 5 shows the estimated receipts to be $120,000.00, a difference of $750.00, but the following questions and

answers support the conclusion that the budget for 1952 was used as a basis for the estimate of $119,250.00 contained in the amended budget for 1951.

"Q. I show you Plaintiff's Exhibit Number 5, which is the budget of Starr County, Texas, for the year 1952, and I direct your attention to page 14 of the document which is headed, 'General Fund' and I direct your attention to the item 'Current Ad Valorem Taxes', and to the subject heading of the budget estimates of 1952. Do you see a figure of $120,000?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. Now, isn't that figure of $120,000 there based on the same figure of the 50c levy and the twenty-six and a half million dollar valuation?

"A. Yes, sir, it is based on twenty-six and a half million dollar valuation.

"Q. It is based on that 50c levy?

"A. Yes, sir.

"Q. The first time that 50c levy was made was on August 14, 1951, was it not?

"A. Yes, sir.

To permit the county to amend its budget in this fashion would be to strike down the Uniform Budget Law which was enacted as a sound public policy of the State to prevent deficit spending by counties. According to the record in this case, the item of estimated receipts of $119,250.00 has no foundation in fact unless we permit the county to reach over into and take a part of the revenues intended for the year 1952, and thereby impose a burden on the revenues of future years. There must be a systematic method of transacting county affairs. That method has been established by the Legislature, and, if followed, each county will be able to conduct its affairs in keeping with the spirit of the statute as well as the Constitution of this State.

The amendment of August 16, 1951 is invalid and unquestionably was enacted after the budget had been prepared in July 1951 for the year 1952. The taxes payable in October, November and December, 1951, must be classed as current revenues for 1952, the succeeding year, and not for the year 1951. We construe

the statute to so provide. The statute does not grant to the county officers who are charged with the duty of administering the law the discretionary power to take into consideration taxes collected during October, November and December, 1951, as a result of a levy made after the hearing on the county budget for 1952, for the purpose of amending the budget adopted in 1950 so as to increase the current revenues for 1951.

The Honorable Price Daniel, Attorney General of Texas, rendered an opinion on June 12, 1947, in response to a request from the County Auditor of Gaines County, Texas. The question submitted called for a construction of Article 689a-9, 10 and 11. The opinion reads in part as follows:

"Under Article 689a-9 to 11, V. C. S., the budget which is prepared in July and adopted in August seems to be tied to the tax levy made in August for taxes which are to become due and payable on October 1st. This is made manifest by that part of Article 689a-11 reading as follows:

" 'When the budget has been finally approved by the commissioners' court, the budget, as approved by the court shall be filed with the clerk of the County Court and *taxes levied only in accordance therewith,* and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the court.'

"The budget referred to here is the budget for the following calendar year. The taxes levied in August on the basis of the August budget are taxes which in contemplation of Article 689a-1 et seq are to be applied to the expenditures for the following calendar year. This practice of levying taxes in August for use in the following calendar year worked well in practice until the Legislature passed Article 7255b, V. C. S., allowing a discount on ad valorem taxes paid in advance. Prior to this law most of the taxes levied in August were paid in January of the following year, immediately before they became delinquent on February 1st, Article 7336, V. C. S. After enactment of Article 7255b, the bulk of the taxes levied in August are paid in October, November and December following, in order to take advantage of the discount. This, however, does not change the fact that taxes collected in October, November and December 1947 under the 1947 assessment are to be used for 1948 operations." (A. G. Op. No. V-246, dated June 12, 1947).

The judgment of the Court of Civil Appeals granting a temporary injunction enjoining the petitioners from paying out any

sums of money not provided for in the original budget, adopted September 11, 1950 for the year 1951, during the pendency of this suit, is affirmed.

Opinion delivered May 6, 1953.

Associate Justice Culver not sitting.

MR. JUSTICE CALVERT, joined by Justices BREWSTER and GRIF-FIN, dissenting.

I cannot agree with the majority opinion.

As stated by the Court of Civil Appeals, 250 S.W. 2d 242, "The controlling question squarely presented by this case is whether or not tax monies collected during the month of October, November, and December of 1951, as a result of a levy made following the hearing upon a county budget for 1952, constitute 'current revenues' for the year 1951."

It becomes important to know whether such monies constitute "current revenues" for the year 1951, for if they do not then the action of the commissioners' court of Starr County taken on August 16, 1951, in amending the budget for 1951 and ordering increased expenditures for that year would violate Section 7 of Article XI of the State Constitution and would be void.

The pertinent part of Section 7 of Article XI of the Constitution is set out in the majority opinion and need not be repeated here. Suffice it to say that it prohibits any city or county from incurring a debt unless provision is made at the time for levying and collecting a tax sufficient to pay interest thereon and provide a sinking fund. This prohibition has been an integral part of our Constitution since 1869 when it was included in Section 23 of Article XII.

Although McNeal v. City of Waco, 89 Texas 83, 33 S.W. 322, decided by this court in 1895, is usually cited as the leading case for the interpretation given the foregoing constitutional provision to the effect that an obligation to be paid out of current revenue is not a debt within the meaning thereof, that interpretation seems to have been announced first in 1883 in The City of Corpus Christi v. Woessner, 58 Texas 462. It was reaffirmed in The City of Terrell v. Dessaint, 71 Texas 770, 9 S.W. 593, in which the court added: "We freely concede that debts for the ordinary running expenses of a city, *payable within a year out*

*of the incoming revenues of the year,* and with other indebtedness *not clearly in excess of the yearly income* for general purposes, can be created by a city."

The reason for the construction placed on the provision is made so clear by the court's opinion in McNeal v. City of Waco, supra, that a part of that opinion should be quoted (89 Texas 83, 33 S.W. 323).

"These constitutional provisions were intended as restraints upon the power of municipal corporations to contract that class of pecuniary liabilities not to be satisfied out of the current revenues, or other funds within their control lawfully applicable thereto, and which would therefore, at the date of the contract, be an unprovided for liability, and properly included within the general meaning of the word 'debt'. They have no application, however, to that class of pecuniary obligations in good faith intended to be, and lawfully, payable out of either the current revenues for the year of the contract or any other fund within the immediate control of the corporation * * *. We conclude that the word 'debt' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract. except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation."

Thus it appears from the cases cited that before the turn of the century the term "current revenue" took on special meaning in interpreting the constitutional provision to determine whether a particular obligation was a debt.

During the entire period covered by the foregoing decisions —and ever since, for that matter—the statutes of this state provided that taxes for any given year were due and payable on October 1st of that year. See Acts 1876, p. 260; General Laws of Texas, Vol. 8, p. 1096, Vernon's Anno. Civ. Stat. Art. 7255. That such was the effect of the statute is not left in doubt by judicial decisions. Wall v. Club Land & Cattle Co., Tex. Civ. App., 88 S.W. 534, reversed in part, Club Land & Cattle Co. v. Wall, 99 Texas 591, 91 S.W. 778, 92 S.W. 984; Echols v. Miller, Tex. Civ. App., 218 S.W. 48, no writ history; Crutcher v. Aiken, Tex. Civ. App., 252 S.W. 844, no writ history. In Club Land & Cattle Co., v. Wall, supra, 99 Texas 591, 91 S.W. 2d 779, this court said that "The indulgence by the state to the 1st of March

did not relieve the taxpayer of the duty to pay at any time between the 1st of October and the 1st of March."

While it is not likely that as large a percentage of taxes was paid in October, November, and December of the year for which they were levied prior to the enactment in 1939 of Article 7255b, V.A.C.S., giving a premium for early payment, as are now paid in such months, we may assume, I think, that at least some taxpayers met their tax obligations promptly. So it was with full knowledge that the law provided for the payment of taxes for the current year on and after October 1st of the same year and that payments thereof were actually made in the months of October, November, and December of the same year that the court spoke of "current revenue" as "incoming revenues of the year" and "yearly income" of the year.

Webster's New International Dictionary defines the word "current as "belonging to the present time" and the word "revenue" as synonymous with "income". "Income" is said to mean "to come in".

The taxes levied in the instant case in August 1951 were taxes for the year 1951, not for the year 1952. They were levied upon property owned on and valued as of January 1, 1951 (Art. 7151, V.A.C.S.) and were due and payable on October 1, 1951. These taxes constituted current revenue within the meaning of the constitution for some year. The majority has said for 1952. But how can it be said that taxes levied in 1951 for the calendar and fiscal year of 1951, upon property owned on and valued as of January 1, 1951, to be due and payable on October 1, 1951, and actually paid in October, November, and December 1951, are "current revenue" for 1952? How can it be said that such taxes are "incoming revenues of the year" 1952, or "yearly income" for the year 1952? How can it be said that these taxes "come in" in 1952 when in fact they "come in" in 1951?

The majority supports its holding solely by an opinion of the Attorney General which says, in effect, that to hold the money to be current revenue for the year 1952 rather than for the year 1951 is more in harmony with the provisoins of the Uniform Budget Law. Art 689a-9 to 689a-12, V. A. C. S. But the term "current revenue" has been used constantly by the courts" and has therefore had a definite meaning since 1883, and the budget law was not enacted until 1931. I find nothing in the budget

law which expressly or by necessary implication requires a new and different meaning.

Moreover, our attention has been called to another opinion of the Attorney General, No. V-2960 dated September 18, 1952, in which it is held that taxes collected in October, November, and December in the year in which levied are current revenue for such year in counties of over 225,000 population coming under the provisions of Acts 1939, 46th Leg., p. 144, § 1, as amended Acts 1945, 49th Leg., p. 93, ch. 65, § 1 (Art. 1666, Note, V. A. C. S.). Under the provisions of the act referred to the budget of the county is originally prepared and adopted in January and it appears to be the reasoning of the Attorney General that since the adoption of the budget is not followed immediately by a tax levy,—"this new budget law does not tie the budget to any particular tax levy" "current revenue" in these counties is something wholly different from "current revenue" in counties of less than 225,000 population coming under the Uniform Budget Law. The vital instrument being construed in each instance is the Constitution and it is wholly unlikely that the Legislature by the enactment of different budget laws should have intended that the constitutional prohibition against incurring debts would mean one thing as to one group of counties and something wholly different as to another group.

I submit there is no such distinction—that current revenue for a given year in counties both large and small is the actual or reasonably anticipated income of the county for that year, that is, the money collected or to be collected by the county during the year. This was the meaning of the term for half a century before adoption of the Uniform Budget Law and it is still its meaning.

The judgment of the Court of Civil Appeals should be reversed and the judgment of the trial court affirmed.

Associate Justices Brewster and Griffin join in this opinion.

Opinion delivered May 6, 1953.

Rehearig overruled June 3, 1953.