**H. P. GUERRA et al., Appellants,**

v.

**M. J. RODRIGUEZ et al., Appellees.**

No. 10273.

Court of Civil Appeals of Texas.

Austin.

Jan. 5, 1955.

Rehearing Denied Jan. 26, 1955.

See, also, 263 S.W.2d 185.

716

Hartley & Lattimore, Raul L. Longoria, Pharr, for appellants.

Raymond, Algee, Alvarado, Kazen & Woods, Laredo, A. J. Vale, Rio Grande City, L. Hamilton, Austin, for appellees.

GRAY, Justice.

Appellants, individually and as representatives of persons similarly situated, brought this suit against Starr County, the commissioners' court, named county officials, the county depository and alleged holders of scrip warrants in their individual capacities and as representatives of a class of persons similarly situated. By the suit appellants sought to enjoin all proceedings under the 1954 budget of Starr County, to set aside the order of the commissioners' court approving the budget and the order levying a tax in accordance therewith.

A nonjury trial was had and all relief prayed for by appellants was denied.

Findings of fact and conclusions of law were not requested and none were filed.

Appellants here present two points which are to the effect that the trial court erred in refusing to grant the relief prayed for because: (1) the total resources of Starr County listed in the 1954 budget is erroneous and fraudulent in that the same arbitrarily sets a false and excessive limit within which proposed expenditures may be set; and (2) the budget listed as authorized expenditures for 1954 warrants described as "scrip—1952" because the same were issued for the payment of debts created in 1952 without provisions being made at the time for levying and collecting a tax sufficient to retire the same and without reasonable contemplation that such debts would be satisfied out of the current funds or out of some fund then within the immediate control of the county.

Art. 689a–9, Vernon's Ann.Civ.St., makes the county judge of each county the budget officer for the commissioners' court, and provides that during the month of July of each year the county judge, assisted by the county auditor or by the county clerk, shall prepare a budget covering all expenditures of the county for the succeeding year. The statute then further provides:

"Such budget shall be carefully itemized so as to make as clear a comparison as practicable between expenditures included in the proposed budget and actual expenditures for the same or similar purposes for the preceding year. The budget must also be so prepared as to show as definitely as possible each of the various projects for which appropriations are set up in the budget, and the estimated amount of money carried in the budget for each of such projects. The budget shall also contain a complete financial statement of the county, showing all outstanding obligations of the county, the cash on hand to the credit of each and every fund of the county government, the funds received from all sources during the previous year, the funds available from all sources during the ensuing year, the estimated revenues available to cover the proposed budget and the estimated rate of tax which will be required."

Sections 10, 11, 12 and 20 of Art. 689a, supra, make provisions for: the filing of the budget with the county clerk; a public hearing before the commissioners' court; for amendments to the budget; the final approval of the budget by the commissioners' court; filing of the approved budget with the county clerk, and the levy of taxes in accordance with the budget. Further providing that county funds shall not be expended except in compliance with the approved budget and that a summarized statement of the adopted budget shall be filed with the State Comptroller prior to October 15 of each year. Section 11, supra, exempts counties with a population in excess of 350,000 according to the last preceding United States census from its provisions.

Sometime in July, 1953, preparation of the 1954 budget was begun. It was prepared on Comptroller Form No. 768. The total property valuation of Starr County was listed at $29,750,000 and the total tax

rate was $1.50 on each $100 assessed valuation. Six per cent was deducted as the estimated amount of collection failures and $419,475 was listed as current ad valorem taxes for the year 1954. To this sum was added $10,440 estimated as the amount of delinquent taxes to be collected and the sum of $128,640 as other receipts— beer and liquor license fees and all other estimated revenues to be received during the year 1954. The total of all receipts was listed at $558,555 and a "beginning balance" for the year 1954 was listed at $422,586.73. It is not clear how this "beginning balance" was arrived at whether the total of estimated taxes to be collected during the months of October, November and December of 1953 alone or together with other funds remaining on hand as of December 31, 1953. There was also added "securities" in the sum of $40,000, listed in the budget on Form No. 768-8 "Statement of Indebtedness 1. County Bonds and Time Warrants." in the column "Sinking Funds," "Securities." The "total resources" were listed at $1,021,141.73 from which sum was taken the estimated expenditures for the year 1954 amounting to $660,719.47 leaving a balance of $320,422.76 which sum was listed as the "ending balance" for that year. There was added to this ending balance "securities" $40,000. Thus these securities were evidently included as a part of the complete financial statement of the county rather than as funds subject to use.

In May, 1953, the Supreme Court decided McClellan v. Guerra, Tex., 258 S.W.2d 72, 75, a case from Starr County. The construction of Art. 689a–9, supra, was involved and the Court said:

"The taxes payable in October, November and December, 1951, must be classed as current revenues for 1952, the succeeding year, and not for the year 1951. We construe the statute to so provide."

On May 26, 1953, the Legislature passed an Act amending Article 689a by adding section 10a. Acts 1953, 53rd Leg., p. 1056, Chap. 439. This Act is headed "Coun-ty Budgets—Estimates of Revenue", and added section 10a is:

"'Section 10a. The County Judge in preparing the budget to cover all proposed expenditures of the county government for the succeeding year shall estimate the revenue to be derived from taxes to be levied and collected during such succeeding year, and such revenue shall be included in the estimated revenues available to cover the proposed budget.'" Vernon's Ann.Civ. St. art. 689a–9a.

Section 10a, supra, became effective 90 days after May 27, 1953 and therefore was in force during the year 1954.

■ Appellants say that the "beginning balance" shown in the 1954 budget necessarily includes taxes collected during the months of October, November and December of 1953, and that adding this sum to the "net current ad valorem tax" for 1954 which necessarily includes all 1954 taxes becoming delinquent and not collected until some subsequent time creates a duplication of funds, results in using some items twice, constitutes a false book value and a padding of the several constitutional funds of the county.

The official rolls made out and delivered by the tax assessor of Starr County was controlling as to the total amount of property subject to taxation in that county. The 1954 budget is not challenged on the basis of this total valuation of taxable property. Further the power to fix a tax rate sufficient to raise revenue needed to meet the estimated expenditures of the county for the ensuing year is derived from the Constitution and the statutes relating to taxation and not the budgeting law which deals with expenditures. Rachford v. City of Port Neches, Tex.Civ.App., 96 S.W.2d 167, error ref.

■■ It is not argued that the requirements of the statute supra as to what the budget should contain were not met. The budget for 1953 estimated an ending balance for that year. Even if this ending balance

included taxes estimated to be collected during the months of October, November and December of that year it was a proper showing in both the 1954 and 1953 budgets of "funds received from all sources during the previous year, the funds available from all sources during the ensuing year * * *." Regardless of whether these funds were available for use during 1953 (added section 10a of Art. 689a, supra, effective during the months of October, November and December, 1953, but not when the budget for 1954 was prepared and approved) if they were not then used they became available for use during 1954. This surplus was an item to be considered by the commissioners' court when it came to fix the tax rate for 1954. In the absence of proof of a clear abuse of discretion or of collusion or fraud the exercise of its judicial discretion by the commissioners' court is conclusive. 11 Tex.Jur., Sec. 40, p. 568. The trial court impliedly construed any evidence, if in fact there was any, before him on the issue of abuse of discretion, collusion and fraud on the part of the commissioners' court against appellants by denying them relief. If the record supports this implied finding, which we think it does, then it must be sustained because even if there were some evidence to the contrary appellants failed to elicit a finding of abuse of discretion or of fraud on the part of the commissioners' court. West Production Co. v. Penn, Tex.Civ.App., 131 S.W.2d 131, error ref.

Referring to appellants' argument that the budget necessarily takes into consideration 1954 taxes that may become delinquent and not collected until some subsequent time, it is to be noticed that the budget estimated that six per cent of the total estimated tax would be delinquent and deducted this amount from the estimated total.

■ There is no provision in the budget law requiring any amount to be estimated as delinquent taxes for which reason that matter must be left to the discretion of the budget officers.

Appellants complain that the 1954 budget lists as authorized expenditures for that year certain scrip warrant issued at the direction of the commissioners' court and registered by the county treasurer in January and February 1953, and say these were issued "for salaries, labor done and materials furnished the county at various times during the year 1952." They further say that said warrants were issued for the payment of debts created in 1952 without provisions being made at the time for levying and collecting taxes sufficient to retire the same as is required by Section 7, Art. 11, Texas Constitution, Vernon's Ann.St., and that at the time other valid outstanding obligations and the ordinary expenses of the county exceeded the current revenues and depleted the several county funds.

■ If legal charges against the county, these warrants being duly registered are payable, not on any specified date but in their due order, when the money is available in the particular fund against which they are drawn. Art. 1625, Vernon's Ann. Civ.St.; Rains v. Mercantile Nat. Bank, 144 Tex. 466, 191 S.W.2d 850.

■ We will first consider whether it is shown that the warrants are "debts" within the meaning of Section 7 of Article 11 of the Texas Constitution. In Texas & New Orleans R. Co. v. Galveston County, 141 Tex. 34, 169 S.W.2d 713, 715, the Court said:

"* * * the word debt, as used in the Constitution, means any pecuniary obligation imposed by contract, except such as was, at the time of the agreement, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year or out of some fund then within the immediate control of the county. In other words, if the obligation does not arise as an item of ordinary expenditure in the daily functioning of the county government or if it is not to be paid out of funds then in the county treasury legally applicable thereto, it is a debt and falls under the condemnation of the Constitution, unless the required provision for its payment

ment is made at the time the obligation is incurred. McNeal v. City of Waco, 89 Tex. 83, 33 S.W. 322; Stevenson v. Blake, 131 Tex. 103, 113 S.W.2d 525."

Appellants do not say these warrants were issued for unlawful charges nor that they were not issued for the ordinary running expenses of the county for the year 1952.

■ There is nothing in the Constitution or the statutes which prohibits a commissioners' court from issuing warrants to pay the ordinary running expenses of the county where there are funds under its control from which it is contemplated the debt shall be paid. 11 Tex.Jur., Sec. 121, p. 670. If in fact the debt is not so paid it remains a legal charge against the county and would not be defeated if in fact there was not sufficient money in the fund against which the warrant was drawn to pay the debt and other expenses of the county. Wilkinson v. Franklin County, Tex.Civ. App., 94 S.W.2d 1190, error ref.

Appellants say the balance in the various funds of the county on August 9, 1952 was:

"Road and Bridge Fund....... $8,908.17
General Fund................ 2,485.51
Special Road & Bridge Fund.. 6,087.92
Officers Salary Fund........ 6,871.43
Farm to Market Lateral Fund.. 11,090.62
Flood Control Fund.......... 5,510.89"

The county treasurer testified that beginning with July, 1952, Starr County had registered and unpaid warrants as follows:

"A. In July we had outstanding an amount of $5,407.06.

"Q. And the next one? A. In August there was $5,848.09.

"Q. And the next? A. September, $5,422.49.

"Q. And next? A. October, $8,-126.48.

"Q. And next? A. November, $4,743.72.

"Q. And the next one? A. December, $3,544.36."

It is not shown against which funds the warrants were drawn.

In the "Current Tax Collection History" of Starr County shown in the 1954 budget there is a summary of the 1952 budget. It shows: assessed valuation of property $26,-500,000; tax rate $1.50; total taxes levied $398,500, tax delinquent at the end of the year $42,687.28, and collections for the current year $355,812.72. The "summary and comparison" of the two budgets show that for 1952 there were: net current ad valorem taxes $387,827.04; delinquent taxes $8,-327.33; other receipts $113,433.08; total receipts $509,584.45; beginning balances $355,048.29; total resources $864,632.74; total expenditures $355,895.88, and the ending balance $508,736.86.

■ The foregoing history, the showing of the condition of the several county funds on August 9, 1952, and the evidence of the county treasurer were evidence before the trial court. It is further shown: that $299,588.12 was collected as current ad valorem taxes during October, November and December of 1952; that the county auditor would not allow this money to be used, and that it was distributed on the books to the several funds but it was kept in a separate fund and not used. If this sum is taken from the ending balance shown in the budget for 1952 there is left a substantial balance on hand subject to the payment of expenditures made that year.

The trial court impliedly found that when the debts in question here were made the commissioners' court could reasonably expect that the same could be paid from current revenues. Raines v. Mercantile Nat'l Bank, supra.

We have not been furnished any analysis of the testimony, and have not found any, showing this implied finding to be erroneous.

The judgment of the trial court is affirmed.

Affirmed.