

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

February 20, 1973

Honorable Harold Vittitoe
County Attorney, Brooks County
P. O. Box 502
Falfurrias, Texas 78355

Opinion No. H- 12

Re: Whether revenues collected
in calendar year 1972 from
that year's ad valorem tax
levy can be spent for expenses
authorized by that year's
county budget duly adopted
to the extent that the revenues
from the levy appear in the
budget as available estimated
revenues to be expended
under various items of
expenses therein set out
and related questions?

Dear Mr. Vittitoe:

You have submitted a request for our opinion in answer to six
questions all having to do with the budgetary process of Texas counties.

We note that Brooks County has fewer than 225,000 residents and,
therefore, is not governed by Article 1666a, Vernon's Texas Civil
Statutes.

Your first question asks:

"Can revenues actually collected in calendar
year 1972 from the 1972 ad valorem tax levy in
Brooks County, Texas be spent for expenses authorized
by said County's 1972 County Budget duly adopted to the
extent that said revenues from said 1972 tax levy appear
in said 1972 Budget as available estimated revenues to
be expended under various items of expenses set out
in the said 1972 budget?"

-49-

This question has been expressly answered in Duval County v. Rios, 326 S. W. 2d 42 (Tex. Civ. App. San Antonio, 1959, no writ history) where the court held that taxes collected during October, November and December on levys made during the same year were to be considered as "current revenues" of the county for that year.

The San Antonio court relied upon the fact that the earlier contrary holding in McClellan v. Guerra, 154 Tex. 373, 258 S. W. 2d 72 (1953) resulted in the adoption of what is now Section 9a of Article 689a (Acts 1953, 53rd Leg., ch. 439, p. 1056) which provides:

> "The county judge in preparing the budget to cover all proposed expenditures of the county government for the succeeding year shall estimate the revenue to be derived from taxes to be levied and collected during such succeeding year and such revenue shall be included in the estimated revenues available to cover the proposed budget. "

Section 3 of the 1953 Act declared:

> "The fact that under the present law it is not clear that revenue derived from taxes levied and collected during the year covered by the county budget constitute current revenue of the county to be used during that year to defray current expenses of the county should be taken into consideration in the preparation of all county budgets, and the fact that the larger counties and all cities of the State are now permitted to use, and are using, such revenues to defray their current expenses for the year, while small counties may be deprived of that right under recent court decisions, which will result in unjust discrimination against the smaller counties, creates an emergency . . . . "

And see Guerra v. Rodriquez, 274 S. W. 2d 715 (Tex. Civ. App. Austin, 1955, error ref. n. r. e. ).

Your first question, therefore, is answered "Yes".

Your second, third and fourth questions are conditioned upon an affirmative answer to question No. 1 and ask that we assume further that there are no cash balances in some of the county funds of Brooks County (although there are budgeted balances in such funds estimated to be supplied by the levy and collection of ad valorem taxes during the calander year 1972).

Question No. 2 asks:

"Under budget conditions outlined in Question No. 1, can County warrants be drawn, registered and delivered to the payee on such County Funds (containing no cash balances) so long as the aggregate of such warrants on each such fund, when added to warrants on each such fund previously drawn, registered and delivered to payee, do not exceed budgeted items of revenue and expense in each such fund in the 1972 budget?"

Your third question is:

"If the answer to Question No. 2 is "Yes", do such warrants so drawn on funds without present cash balances constitute a "debt" within the prohibition of Article 11, Section 7, of the Texas Constitution, where such estimated revenues from the 1972 tax levy shown to be expended in the 1972 budget are in fact collected in 1972?"

Your fourth question is:

"Do such warrants so drawn on such funds without present cash balances constitute legal obligations of the County, supported by a pledge of the full faith and credit of the County, which entitle holders of such warrants as assignees for value to payment in the order of their registration so long as such budgeted revenues from said 1972 tax levy are actually collected in calendar year 1972 and thereafter deposited to such County Funds?"

Section 7 of Article 11 of the Texas Constitution provides, in part:

> "But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent (2%) as a sinking fund;. . ."

As used in this context, the word "debt" has been held to mean:

> ". . . [A]ny pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation. . . ." McNeill v. City of Waco, 89 Tex. 83, 33 S. W. 322, 324 (1895).

This definition has been cited and followed without exception in later cases: Brazeale v. Strength, 196 S. W. 247 (Tex. Civ. App. Texarkana, 1917, no writ history); Stevenson v. Blake, 131 Tex. 103, 113 S. W. 2d 525 (1938); T. & N. O. R. R. Co. v. Galveston County, 141 Tex. 34, 169 S. W. 2d 713 (1943); Ochiltree County v. Hedrick, 366 S. W. 2d 866 (Tex. Civ. App. , 1963, error ref. n. r. e. ); Foster v. City of Lubbock, 412 S. W. 2d 376 (Tex. Civ. App. Amarillo, 1967, error ref. n.r. e. ).

Thus, the important consideration at the time the warrant is issued or the expense is incurred is whether "within the lawful and reasonable contemplation of the county officers" it will be satisfied out of current revenues for that year or out of some fund within the control of the county.

When it has been determined that the sum of claims representing ordinary expenses amounts to as much as it reasonably could be expected the current revenues of the county would amount to, then even ordinary expenses thereafter incurred are within the prohibition of the Constitutional provision. Brazeale v. Strength, supra.

That it is contemplated the obligation "might" come due and be paid out of current revenues is not sufficient to meet the Constitutional requirements. Stevenson v. Blake, 131 Tex. 103, 113 S.W. 2d 525 (1938) held that a contract for attorneys fees, part of which were to become payable when judgments in pending litigation became final, was void or voidable under the Constitutional prohibition.

That, in fact, the indebtness is not paid out of available current revenues or the current revenues do not develop as anticipated, does not render the obligation void. Wilkinson v. Franklin County, 94 S.W. 2d 1190 (Tex. Civ. App. Texarkana, 1936, error ref.); Guerra v. Rodriguez, 274 S.W. 2d 715 (Tex. Civ. App. Austin, 1965, error ref. n. r. e.); Angelina County v. Kent, 374 S.W. 2d 313 (Tex. Civ. App. Beaumont, 1963, no writ history).

Whether or not a particular obligation amounts to a debt in violation of the Constitutional provision in Article 11, Sec. 7, is a fact question and the courts will consider the entire transaction, its background, etc., and will test the reasonableness of the contemplation that the obligation would be paid from current revenues. Rains v. Mercantile Natl. Bank, 144 Tex. 466, 191 S.W. 2d 850 (1946) is a good example. See also Clay Building Co. v. City of Wink, 141 S.W. 2d 1040 (Tex. Civ. App. El Paso, 1940, no writ history).

Under these authorities we answer your second question "yes", so long as it is lawful and reasonable to anticipate that, in fact, the warrants will ultimately be paid out of current revenues.

With the same assumption, the answer to your third question is "No". Such warrants would not constitute a "debt" within the prohibition of Article 11, Section 7 of the Constitution of Texas.

The answer to your fourth question is "Yes".

Your fifth question asks:

"Where the County Budget of Brooks County for 1972 (adopted in the summer of 1972 by said Court, under the emergency provisions of Article 689a-11, increasing therein the estimated revenues

and budgeted expenses for 1972, before said Court meets as a Board of Equalization and sets the tax rate for said County's ad valorem tax levy for 1972, can all ad valorem taxes actually collected by Brooks County in calendar year 1972 from said 1972 ad valorem tax levy, which are shown in said amended 1972 budget as etstimated revenues expendable in 1972, be expended under said amended budget in 1972 for expenses authorized by said amended budget? "

The amendment of county budgets is controlled by Article 689a-11, which provides, in applicable parts:

". . . when the budget has been finally approved by the commissioner's court, the budget, as approved by the court shall be filed with the clerk of the county clerk, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the court. Except that emergency expenditures, in case of grave public necessity, to meet unusual unforeseen conditions which could not, by reasonably diligent thought and attention, have been included in the original budget, may from time to time be authorized by the court as amendments to the original budget. . . ."

Assuming, as your question states, that the budget is "duly amended" under these provision, then we answer your fifth question "Yes".

Provided all other conditions are met, the date on which an amend-ment to the budget is adopted does not affect the liability of "current revenues" during the tax year to meet its expenditures. See for instance McClellan v. Guerra, 152 Tex. 373, 258 S.W. 2d 72 (1953), in which the court, while holding the current revenues were insufficient, was not concerned, apparently, by the amendment on August 16, 1951 of the 1951 budget which had been originally adopted on September 11, 1950. See also Rains v. Mercantile Natl. Bank, 144 Tex. 466, 191 S.W. 2d 850 (1946).

Your sixth question asks:

"Under the amended budget circumstances outlined in Question No. 5, would the same answers be given to Questions Nos. 2, 3 and 4, above, if the words 'Question No. 5' were substituted for the words 'Question No. 1' in the first line of Question No. 2?"

Our answer is "Yes", based upon the same assumption we made in our answer to question five.

### - S U M M A R Y -

With reference to counties whose budgets are not governed by the provisions of Article 1666a, Vernon's Texas Civil Statutes, provided the requirements of Article 689a-11 are met, amendments to the budget may be made at any time pr i o r to and during the affected tax year; taxes levied and collected during the tax year constitute current revenues for that year and are available to pay validly adopted budgetary items; a budgetary item is not invalid as constituting a "debt" within the prohibition of Article 11, Section 7, of the Texas Constitution if the county commissioners court could lawfully and reasonably anticipate that it would be wholly satisfied out of current revenues during the budget year, or out of some fund then within their control.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

JOHN M. BARRON
First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee