CITY OF BELTON v. HARRIS TRUST & SAVINGS BANK et al.   (No. 602–4435.)*

(Commission of Appeals of Texas, Section B. April 20, 1926.)

1. Municipal corporations ⬳906, 917(2)—Certificate of Attorney General approving bonds held conclusive on city, charter and provisions of Home Rule Act being only limitations on issuance of bonds (Belton City Charter, art. 12, §§ 1, 4; article 2, § 3; Home Rule Enabling Act, § 4; Vernon's Sayles' Ann. Civ. St. 1914, arts. 619, 625, 879, 882, 924, 925,.1096d; Rev. St. 1911, art. 619).

Belton City Charter, art. 12, § 1, authorizing annual levy of taxes not to exceed $1.50, and by amendment increased to $1.90, and, in view of section 4, article 2, § 3, and Home Rule Enabling Act, § 4, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1096d, authorizing cities to issue bonds to amount provided by charter, provide the only limitations upon such city in issuance of bonds; limitations provided in Vernon's Sayles' Ann. Civ. St. 1914, arts. 879, 882, 924, 925, being inapplicable, and hence certificate of Attorney General approving bonds under Rev. St. 1911, art. 619, as valid obligations is conclusive, under article 625.

2. Municipal corporations ⬳903.

Holders of refunding warrants had burden of proving that original warrants were valid obligations against city.

3. Municipal corporations ⬳903—Recitals in ordinance, authorizing refunding warrants, held to make prima facie case, placing burden on city to show original warrants were invalid.

Recitals in ordinance authorizing issuance of refunding warrants that warrants to be refunded were legally issued were valid and outstanding obligations against city, claims for which were duly allowed by city council held to constitute prima facie proof of validity of warrants, casting burden on city of showing that original warrants were invalid.

Error to Court of Civil Appeals of Third Supreme Judicial District.

Consolidated actions by the Harris Trust & Savings Bank and others against the City of Belton and others. Judgment for plaintiff was affirmed by the Court of Civil Appeals (273 S. W. 914), and defendant named brings error. Affirmed.

C. C. Countess and Walter Miller, both of Belton, and Spell, Naman & Penland, of Waco, for plaintiff in error.

W. P. Dumas, of Dallas, T. C. Hall and Sam D. Snodgrass, both of Temple, and O. Maland, of Chicago, Ill., for defendants in error.

SPEER, J. The following is taken from the very complete statement of the case made by the Court of Civil Appeals, reported in 273 S. W. 914:

"The appeal in this case is from a judgment against the city of Belton in seven consolidated suits brought against the city upon certain warrants and bond and warrant coupons, the validity of which constitutes the controversy presented in each of the cases. There was a trial to the court without a jury in which judgment was rendered in favor of the several plaintiffs for the amounts of the coupons and warrants sued upon, establishing the validity of all the bond and warrant issues brought in question in the litigation, and awarding writs of mandamus against the city officials, requiring the levy and assessment of taxes to satisfy the judgment for the years 1920, 1922, 1923, and 1924. From this judgment the city has appealed.

"We have reached the conclusion that all of the bond issues and warrants, the validity of which is questioned, are valid, and that the trial court rendered the proper judgment. We will state so much of the record as we deem essential to a clear presentation of what we regard as the controlling questions in the case. We will first consider the various bond issues, the validity of which is attacked.

"Prior to August 21, 1914, the city of Belton was a municipal corporation, incorporated under the general laws of the state, and its power to issue bonds was governed by the provisions of title 22 of the Revised Statutes of 1911. The city had, in November, 1881, assumed control of its public schools as an independent school district, in accordance with the laws governing such matters. On August 21, 1914, the city adopted a charter under the home rule amendment, under which it has been subse-

quently governed. This charter contains the following provisions:

"'Article II.—Powers.

"'Section 1. By the legal adoption of this charter, the city of Belton shall be made and constituted a body politic and corporate, and shall possess all powers not inconsistent with this charter and the Constitution and laws of Texas.

"'For greater certainty, the following are hereby specially enumerated and referred to as being among the powers which are hereby conferred upon, and which may be exercised by the city of Belton, to wit:

"'Section 2. All the powers conferred upon cities and towns by title 22 of the Revised Statutes of 1911, except as may hereinafter be denied or limited, are hereby conferred upon the city of Belton as fully and completely as if such powers were herein separately enumerated.

"'Section 3. All powers mentioned in and under section 4 of the Act of the Thirty-Third Legislature, pages 310 to 316, entitled "An act authorizing cities having more than five thousand inhabitants, by a majority vote of the qualified voters of said city, at an election held for that purpose to adopt and amend their charters, etc.," are hereby conferred upon the city of Belton as fully and completely as if each of said enumerated and powers were herein separately enumerated.

"'If in any instance there should arise or be a conflict as to powers mentioned and conferred by section Nos. 2 and 3 hereof, then, in such instance, the power or powers mentioned under and conferred by section No. 3 hereof shall take precedence.

"'Section 4. It is contemplated and intended by the adoption of this charter to confer, and is hereby conferred, upon the city of Belton, the full power of local self-government and the enumeration of and reference to the powers hereinbefore made, or that hereinafter may be made, shall never be construed to preclude, by implication or otherwise, the said city of Belton from exercising any and all powers incident to the full enjoyment of local self-government, provided that such powers shall not be inhibited by the Constitution of the state of Texas.'

"'Article XII.—Taxation.

"'Section 1. The city shall have the power, and is hereby authorized, annually, to levy and collect taxes, not to exceed one and 50/100 ($1.50) dollars, on each one hundred dollars, of assessed valuation of real and personal property within the city limits, not exempt from taxation by the Constitution and laws of the state.'

"'Section 4. All moneys arising from the collection of taxes by the city shall be divided into two funds and be designated as "general fund," and an "interest and sinking fund." It shall be unlawful to use any money derived from the collection of taxes assessed and collected for any special fund for any purpose than the purpose for which same was levied, assessed, and collected.'

"'Article XV.—Public Schools.

"'Section 1. Means and Methods of Operation and Support.—All laws in force, pertaining to the public free schools of the city of Belton, are hereby retained in full force and effect, and said schools shall be continued, managed, and controlled as heretofore, and the trustees of said public free schools shall be elected according to the provisions of the above mentioned laws retained in full force and effect. Means for the support and maintenance of the public free schools and for the support of procuring grounds and constructing and improving buildings for such public free schools shall be obtained according to the laws now in effect relating to such public free schools.'

"On the 10th day of December, 1919, section 1 of article 12 was amended so as to raise the amount of tax levy therein authorized from $1.50 to $1.90 on the $100 of assessed valuation of real and personal property within the city."

The following articles of Vernon's Sayles' Texas Civil Statutes, in force at the time the city of Belton adopted its present charter, are involved, and will require consideration:

"Art. 879.—To appropriate so much of the revenues of the city, emanating from whatever source, for the purpose of retiring and discharging the accrued indebtedness of the city, and for the purpose of improving the public markets and streets, erecting and conducting city hospitals, city hall, waterworks, and so forth, as they may from time to time deem expedient. And, in furtherance of these objects, they shall have power to borrow money upon the credit of the city, and issue coupon bonds of the city therefor in such sum or sums as they may deem expedient, to bear interest not exceeding ten per cent. per annum, payable semiannually at such place as may be fixed by city ordinance; provided, that the aggregate amount of bonds issued by the city council shall, at no time, exceed six per cent. of the value of the property within said city subject to ad valorem tax."

"Art. 882.—All cities and towns providing for permanent public improvements, as contemplated by article 925, shall have the power to issue coupon bonds of the city therefor in such sum or sums as they may deem expedient, to bear interest not exceeding six per cent. per annum; provided, that the aggregate amount of bonds issued for the construction or the purchase of public buildings, water works, sewers and other permanent improvements shall never reach an amount where the tax of twenty-five cents on the one hundred dollars valuation of property will not pay current interest and provide a sinking fund sufficient to pay the principal at maturity; and provided, also, that the amount of bonds issued for street improvement purposes shall never reach an amount where the tax of fifteen cents on the one hundred dollars valuation of property will not pay current interest and provide a sinking fund sufficient to redeem them at maturity; and the amount of bonds legally issued under acts passed prior to the adoption of the present constitution shall not be computed and estimated in the amount of bonds which may be issued for the above named city improvements."

"Art. 924.—The city or town council or board of aldermen of any incorporated city or town within the limits of this state shall have power, by ordinance, to levy and collect an annual ad valorem tax of not exceeding twenty-five cents on the one hundred dollars valuation of taxable

property within such city or town for the erection, construction or purchase of public buildings, streets, sewers and other permanent improvements within the limits of such city or town. Within the meaning of this article shall be included building sites and buildings for public free schools and institutions of learning within those cities and towns which have assumed or which may hereafter assume the exclusive control and management of the public free schools and institutions of learning within their limits."

"Art. 925.—The city or town council of any city or town in this state incorporated under the general law shall have the power, by ordinance, to levy and collect an annual ad valorem tax, sufficient to meet the interest and sinking fund on all indebtedness legally incurred prior to the adoption of the constitutional amendment in 1883, regarding the power of cities and towns to levy and collect taxes, etc., and may levy and collect twenty-five cents on the one hundred dollars valuation of all property in such city or town for current expenses, and may levy and collect an additional twenty-five cents on the one hundred dollars valuation for the purpose of construction or the purchase of public buildings, water works, sewers, and other permanent improvements within the limits of such city or town, and shall also have power, by ordinance, to levy and collect a tax not exceeding fifteen cents on the one hundred dollars valuation of property for the construction and improvement of the roads, bridges and streets of such city or town within its limits. Within the meaning of this article shall be included building sites and buildings for the public free schools and institutions of learning within those cities and towns which have assumed, or may assume hereafter, the exclusive control and management of the public free schools and institutions of learning within their limits."

We shall not undertake to review all the questions considered by the Court of Civil Appeals. The opinion of Chief Justice McClendon evinces great research, and is a thoroughly well-considered expression of the law. We need not elaborate any of the points decided by that court, but we content ourselves with stating briefly our concurrence as to two questions discussed, which we think entirely dispose of the case.

Practically every contention of plaintiff in error centers about its proposition that articles 879, 882, and 925, in their entirety, are necessarily, by incorporation, a part of the city charter, and that the limitations of those articles apply to plaintiff in error as much since, as they did before, the adoption of its charter in 1914.

[1] In form, the proposition as advanced in this court is that the Court of Civil Appeals erred in holding that the certificate of the Attorney General, made pursuant to article 619 of the Revised Civil Statutes of 1911, approving the bonds as valid and binding obligations, is conclusive, but in its last analysis this proposition itself is predicated upon the theory that the articles of the statute above mentioned are a part of the charter provisions in effect, and therefore the contention is made the certificate of the Attorney General is not conclusive against the objection, since the vice in the bonds is one specially excepted from the effects of an opinion by the Attorney General under article 625 of the Statutes. So that, at last, the real question is whether or not the articles referred to, in so far as they constitute limitations upon the powers of plaintiff in error, have any controlling effect upon the question of the validity of the bonds. The vice in plaintiff in error's contention is illustrated in the oft-repeated statements in the application as to the effect of section 2, article 2, of the charter. The contention is made in language like this:

"Section 2, article 2, says that the city of Belton is governed by articles 879, 882, and 925, to the same extent and in the same manner as if said articles themselves were written out under section 2, article 2, of said charter."

And:

"Article 1096d points its finger in no unmistakable terms to the charter itself for the purpose of determining what the limits of the bonded indebtedness are. * * *

"Articles 879, 882, and 925 are expressly set forth in the charter as limitations."

And, further:

"What did the framers of the charter of the city of Belton have in mind when they said that all of the provisions of title 22 were adopted and made a part of the charter."

Now, article 2, section 2, of the charter contains no such language—certainly not in so many words, nor do we believe there is such an implication. That section expressly declares:

"All the *powers* (italics ours) conferred upon cities and towns by title 22 of the Revised Statutes of 1911, except as may hereinafter be denied or limited, are hereby conferred upon the city of Belton," etc.

When the history and purpose of the constitutional amendment and the legislative enabling act authorizing "home rule" to cities is considered, it is apparent the intention of the lawmakers was to enlarge the power of cities coming within the purview of that act. It is therefore significant that section 2 of article 2 imports into the charter the "powers" conferred by title 22, and makes no mention of the important limitations therein contained. If the Legislature had intended to do so, it would have been an easy matter to phrase section 2 so as to have made articles 879, 882 and 925 applicable in their entirety. It would seem this was far from the intention of the Legislature. Article 12 of the charter provides in section 1 for a levy of taxes not to exceed $1.50 annually, which, by amendment, has been increased to $1.90, and, in section 4, that all moneys arising from the collection

of taxes by the city shall be divided into two funds known as "general fund" and "interest and sinking fund." Article 1096d, a part of the charter, confers "the power to issue bonds upon the credit of the city for the purpose of making permanent public improvements or for other public purposes in the amount and to the extent provided by such charter and consistent with the Constitution of the state." These provisions are so inconsistent with those articles of the statute applicable to cities other than those under home rule as to indicate clearly they were complete within themselves, and were intended to provide the only limitations upon the powers of such home rule cities. We think the case comes clearly within the purview of section 3, article 2, of the charter, wherein it is declared expressly:

"If in any instance there should arise or be a conflict as to powers mentioned and conferred by sections 2 and 3 hereof, then, in such instance, the power or powers mentioned under and conferred by section No. 3 hereof shall take precedence."

We think in view of the provisions quoted that the only limitations upon the powers of plaintiff in error in the respects under consideration are contained in the charter, and that the limitations contained in articles 879, 882, and 925 are not a part of such instrument.

[2, 3] The only other question we care to consider is the proposition of plaintiff in error that the Court of Civil Appeals erred in holding the recitals in the ordinance authorizing the issuance of the funding warrants involved constituted prima facie proof of the validity of the obligations. We think the holding of the Court of Civil Appeals upon this point was eminently correct. There is no doubt that the burden of proof was on the plaintiffs below to show that the original warrants for which the refunding warrants were issued were valid obligations against the city. But the holding of the Court of Civil Appeals in nowise disputes this proposition. It merely holds that the evidence introduced constituted prima facie proof of that very fact. That which was held to constitute such prima facie proof is illustrated by the recital, in the ordinance duly passed, as to the purpose and validity of the 1915 warrants, as follows:

"That warrants of said city, to be called city of Belton funding warrants, second series, be issued under and by virtue of the Constitution and laws of the state of Texas for the purpose of funding an equal amount of the warrants of the city duly and legally issued and which are valid, subsisting, and now outstanding obligations against said city, the claims for which were duly ordered and allowed by the city council prior to their issuance, and which

are to be canceled and surrendered, and the warrants hereby authorized issued to the holders in lieu thereof, which said original outstanding warrants are as follows: * * *".

There was other evidence introduced, but the above alone is entirely sufficient, we think, as matter of law to constitute prima facie proof of the validity of the warrants in controversy. The case otherwise comes entirely within the rule quoted by the Court of Civil Appeals from 2 Dillon on Municipal Corporations (5th Ed.) § 855, as follows:

"County and city orders signed by the proper officers are prima facie binding and legal. These officers will be presumed to have done their duty. Such orders make a prima facie cause of action. Impeachment must come from the defendant."

The first case cited by the learned author for this proposition (Wall v. Monroe County, 103 U. S. 74, 26 L. Ed. 430) abundantly supports the text. Speaking of warrants as evidencing an indebtedness of a municipality, Mr. Justice Field there said:

"They are orders upon the treasurer of the county to pay out of its funds for county purposes, not otherwise appropriated, the amounts specified. They establish, prima facie, the validity of the claims allowed and authorized their payment. But they have no other effect."

Of course, such warrants or orders are not strictly negotiable instruments, but the wholesome presumption above adverted to is predicated upon the presumption that public officers have done their duty. But in this case the proof goes further than the mere offering of the warrants or orders. The ordinance authorizing their issuance has itself been offered in evidence. It is difficult to conceive of better evidence than the official act of the city itself determining the existence of the facts which would authorize it to act in the premises. Certainly their deliberate act has some probative force, and is at least prima facie evidence of the existence of the facts recited in the ordinance. If such facts are to be overcome, the burden lies upon the party asserting the contrary. Both matters here mentioned are elaborately discussed in the able opinion of the Court of Civil Appeals, and nothing more need be added.

We recommend that the judgments of the Court of Civil Appeals and the trial court be in all respects affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

CURETON, C. J., not sitting.