ANGELINA COUNTY, Texas, Appellant,

v.

Wilbur KENT, Appellee.

No. 6579.

Court of Civil Appeals of Texas.

Beaumont.

Oct. 10, 1963.

Garrison, Renfrow, Zeleskey, Cornelius & Rogers, Lufkin, for appellant.

Ward Burke, Diboll, for appellee.

McNEILL, Justice.

This is an action by Kent against Angelina County for architectural fees claimed to have been earned under a written contract made between the parties. The petition contained additional and alternative counts alleging acceptance of Kent's work and praying for recovery upon quantum meruit.

The County pleaded in answer several defenses—all of which are represented by points hereinafter set forth and discussed. They will therefore not be listed here. After trial to jury, the court granted Kent's motion to disregard certain of its findings, and rendered judgment in favor of Kent.

The jury found in answer to special issue No. 2 that the parties did not reasonably expect Kent's fee, for preparing the final plans, was to be paid out of the County's current revenue for the year 1958. The County's first point is, in view of such finding, that this obligation was a "debt". It contends this debt was invalid under the provisions of Sec. 7 of Article 11 of our State Constitution, Vernon's Ann.St., because no provision was made by the County, at the time of the creation of the debt, for levying and collecting a sufficient tax to pay the interest thereon, and no provision was made for a sinking fund for its retirement. The Supreme Court in McNeal (McNeill) v. City of Waco, 89 Tex. 83, 33 S.W. 322, held the provisions of this section do not apply "to that class of pecuniary obligations in good faith intended to be, and lawfully, payable out of either the current revenues for the year of the contract or any other fund within the immediate control of the corpora-

tion." 33 S.W. 323, 324. The jury in answer to Issue No. 2 found that the contracting parties did not reasonably expect Kent's fees to be paid out of the current revenue for the year 1958, the year of contract, but in answer to Issue No. 3 it was found that they reasonably expected that the fees would be paid out of funds then under the immediate control of the Commissioners Court of the County. No attack is made upon this finding; it, therefore, must be regarded as conclusive upon the parties. Fidelity & Cas. Co. v. Maryland Cas. Co., Tex.Civ.App., 151 S.W.2d 230.

■ In addition, the record indicates there were at the date of the contract, May 12, 1958, available funds in the county hospital budget for the year amounts substantially more than sufficient to take care of the debt. This, it seems to us, is sufficient proof on this phase of the case to sustain the trial court's judgment in view of the auditing and approval made of its resolution approving his work and claim passed on December 30, 1958. Because a sufficient showing of legality has been made, it was incumbent upon the County to prove the contrary, which we think it has failed to do. City of Belton v. Harris Trust & Savings Bank, (Tex.Com. App.) 283 S.W. 164; Rains v. Mercantile Nat. Bank, 144 Tex. 466, 191 S.W.2d 850; Hidalgo County Drainage Dist. No. 1 v. Creath, 68 F.2d 119 (5th Cir.); Austin Bros. v. Patton (Tex.Com.App.) 288 S.W. 182, 190.

■ That, as it turned out, the architect's fee was not paid out of such funds does not make the obligation void. Colonial Trust Co. v. Hill County, 294 S.W. 516 (Tex. Com.App.) (holding expressly approved); City of Cleburne v. Gutta Percha & Rubber Mfg. Co., Tex.Civ.App., 127 S.W. 1072; Clay Bldg. Material Co. v. City of Wink, Tex.Civ.App., 141 S.W.2d 1040.

The County's second point is that the judgment should not stand because no provision was made in the 1958 budget for payment of an architect's fees. To sustain this point the following portion of Art. 689a–11 is quoted:

"[T]he budget, as approved by the Court shall be filed with the Clerk of the County Court, and taxes levied only in accordance therewith, and no expenditure of the funds of the county shall thereafter be made except in strict compliance with the budget as adopted by the Court."

■ The budget for 1958 was made up and approved in the fall of 1957. The written contract employing Kent to prepare plans and specifications for improvements upon and remodeling the county hospital was made May 12, 1958. No separate item for architectural work was placed in the original budget made in 1957, nor was the budget later amended therefor. No case is cited where failure to expressly budget such architectural fees would under Art. 689a–11 make a contract therefor invalid. The question would seem to be whether this expense could reasonably be classed as one properly belonging to one or more of the three budgetary items for the county hospital as "permanent improvements", "miscellaneous" and "permanent improvements-miscellaneous". Involved in the year 1958 was the desire of the County to remodel or improve its hospital facilities. At or about the time Kent was employed the County contemplated borrowing some $150,000.00 from the Hill-Burton Funds of the Texas State Department of Health for hospital improvements and needed some preliminary plans to accompany the application for loan. These Kent prepared. Later in the year however Kent prepared other final plans and specifications which were used as a basis for a county-wide election to issue bonds for hospital improvements in amount of $350,000.00, called by the Commissioners Court on December 30, 1958. We are of the opinion that the employment of an architect to aid and guide the County in its efforts to improve its hospital facilities is an expense reasonably within the items of the County Budget listed above. See Tackett v. Mid-

dleton (Tex.Com.App.) 280 S.W. 563, 44 A.L.R. 1143.

The County next says that the written contract by which it employed Kent to prepare plans and specifications for hospital improvements was ambiguous. And it says the jury in answer to Issue 11 having found that it was agreed between Kent and the County that he would design plans for improvement of the county hospital which could be constructed for a sum of not more than $300,000.00, and the lowest bid at the only holding of bids was $305,410.00, Kent breached his contract and may not recover. Kent prepared this contract. Paragraph 13 thereof reads in pertinent part as follows:

"13. The Owner has in mind spending $150,00 of its own funds and to apply for $150,000 of Hill Burton Funds from the Texas State Γ partment of Health. It is planned that the Owner will instruct the Architect to proceed with Final Working Drawings and Specifications for a building to cost approximately $300,000 prior to final approval of Hill Burton Funds for this project."

The County says that this language indicates that $300,000.00 was all that the County would have for the hospital improvements—that this in effect, is a limitation— "an exact sum which is the maximum of $300,000.00 expected to be available for use in the construction". And since the architect undertook to draw plans for improvements to cost not more than $300,000.00 he breached his contract and may not recover —Citing Bueche v. Eickenroht, Tex.Civ. App., 220 S.W.2d 911, and other cases cited and relied upon in that case. But we think the phrase, the owner "has in mind spending $150,000.00 of its own funds" cannot be said to be an absolute limitation on said amount. The language "has in mind" means "is thinking of", "contemplates", and is clearly not indicative of crystallization but stands closer to the meaning of approximation. Such language cannot be reason-

ably said to fix a definite maximum. Following that language is the sentence providing that the architect will proceed with final Working Drawings and Specifications for a building to cost "approximately" $300,000.-00. This contract is not ambiguous in the respect discussed and the trial judge correctly disregarded the jury's answer to Issue No. 11. Smith v. Dickey, 74 Tex. 61, 11 S.W. 1049; Murphy v. Dilworth, 137 Tex. 32, 151 S.W.2d 1004; Republic Nat. Life Ins. Co. v. Spillars, Tex., 368 S.W.2d 92(6).

Moreover, after the bids were in and it was discovered the lowest bid was that of Temple Associates in the sum of $305,410.00 the Commissioners Court authorized Kent and representatives of Temple Associates to arrive at a method of reducing the cost of the building to less than $300,000.00. As a result, certain items in the plans and specifications were changed with approval of Temple Associates so that the cost of the building would have been $298,038.00, which was promptly reported to the court. The third point is overruled.

The fourth point complains of the Court's action in rendering judgment for Kent upon a quantum meruit basis for $13,900.00. We cannot tell whether the judgment is upon such basis or not. Since we have held that Kent may recover upon his express contract the recovery upon quantum meruit to the extent of $13,400.00 would be improper but not material error, for calculated on either theory it would be the same. The Commissioners Court had on December 30, 1958, audited and ordered paid the fee for $13,500.00. (On the same day the County paid $100.00 on this item.) The jury found in answer to Issue 6 that as of December 30, 1958, the usual, reasonable and customary compensation for all work done by Kent for the County was $13,500.00. This figure, therefore, is acceptable whether on contract or quantum meruit. The record is susceptible to the construction that the County requested and obtained additional service from him for which no special contract was made. The

court submitted Issue No. 7, inquiring what was the usual, reasonable and customary compensation for all work done by Kent for the County as of February 27, 1959, to which the jury replied $14,000.00. In rendering the judgment for $14,000.00 for Kent the court may have taken this figure and subtracted the $100.00 paid on December 30, 1958, for he rendered judgment for Kent for $13,900.00. Or, the court could have taken the $13,500.00 upon the contract as approved by the Commissioners Court on December 30, 1958, subtracted the $100.00 therefrom and taking the sum of $13,500.00 found by the jury in answer to Issue 6 (on quantum meruit) deducted this sum from $14,000.00, the reasonable value of all the services rendered through February 27, 1959 (quantum meruit) and arrived at the reasonable value of the services rendered in 1959 as the sum of $500.00—thus adding $13,400.00 to $500.00, making $13,900.00. The judgment is susceptible to this latter construction. If we are mistaken that Kent did other work upon which specific terms were not set, the judgment for $13,900.00 can be upheld upon the strength of his written contract which called for payment to him of 4½% upon an alternative bid of $314,070.00 made by Temple Associates.

The fifth point asserts that since no official action was taken by the Commissioners Court instructing Kent to proceed with the final plans, and the Court acts only as a body and through its minutes, Kent was entitled to recover only for the sum of $2,000.00 representing his work on the Hill-Burton Fund application. The answer to this is that what the Commissioners Court could approve in the first instance, it may ratify, and its order and resolution of December 30th, 1958, clearly ratified the work he had done to that time. Cameron County v. Fox, Tex.Com.App., 61 S.W.2d 483 (holding expressly approved); Rodgers v. County of Taylor, Tex.Civ.App., 368 S.W.2d 794. The County on the same day ordered a bond election for hospital improvements based on Kent's final plans and specifications. The point urged is without merit.

The County's sixth and last point is that since no claim in excess of $13,400.00 was presented to the Commissioners Court judgment in excess of that amount is improper and violates Art. 1573, V.A.T.S. We think, however, that claim for that amount, in fact for $14,133.15, was presented to the Court for approval by Kent's letter of March 20, 1959. See Statement of Facts, pp. 758, 637, 638.

We should comment on another matter. After verdict, Kent made his motion to disregard certain findings of the jury. Among these findings were the following: (Issue 14) the Commissioners Court did not on December 30, 1958, approve the action of the County Judge in making the contract of May 12, 1958, with Kent; (Issue 17) the Court in approving Kent's final plans and specifications in December, 1958, did not have knowledge of paragraph 5 of said contract whereby Kent would be entitled to 4½% of the cost of the project for work to that date; (Issue 18) the Court did not approve the bill for services rendered by Kent in the amount of $13,500.00 at the December 30, 1958, meeting. The trial court sustained the motion to disregard these findings. Although County's brief has mentioned the findings set forth in this paragraph, it has not urged the trial court erred in setting aside such findings. Nor has any attack been made by point or points, on the trial court's action disregarding them. We therefore accept the trial court's action as correct and are bound thereby. 4 Tex.Jur.(2), Sec. 643, pp. 150, 151.

Appellee's petition includes a prayer for writ of mandamus ordering the Commissioners Court to pay or take the necessary steps to arrange payment of his judgment. The trial court declined to grant this remedy. We are of the same view. A county may in good faith contest claims

against it. And it should contest those of doubtful validity. That this is done does not necessarily subject it, upon losing its contest, to the stringent remedy of mandamus. It is assumed that the proper County officials will recognize their duty, when and if the judgment herein approved becomes final, to pay or make prompt arrangements for its legal payment. The action of the trial court denying the writ of mandamus is therefore affirmed. This is done, however, without prejudice to application therefor later, should it appear to be necessary for the collection of the judgment.

Judgment affirmed.