

# THE ATTORNEY GENERAL
# OF TEXAS

October 29, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Dale Hanna
Johnson County Attorney
Johnson County Courthouse
Cleburne, Texas    76031

Opinion No.  JM-818

Re:  Whether a commissioners
court is authorized or re-
quired to fund an independ-
ent audit of the county
clerk's office under certain
circumstances

Dear Mr. Hanna:

You ask:  .

> Can or  must the  commissioners court  of
> Johnson County, Texas pay for an independent
> audit of the county clerk's office which was
> done at  the  request of  the  county  clerk
> without prior  commissioners court  approval
> in preparation for his trial on a charge  of
> theft and which resulted in his acquittal?

You furnish the following factual background:

> During the summer  of 1986 a  misdemeanor
> indictment charging theft was filed  against
> the county clerk  of Johnson County,  Texas.
> The allegation was that the county clerk had
> taken money  from  the office  for  personal
> use.  A jury trial  was held and the  county
> clerk was found not guilty in October, 1986.
> During the  course of  preparing for  trial,
> the county clerk hired an independent C.P.A.
> to do an audit of his office.  This was done
> at a cost  of $7,700.00.   After the  trial,
> the county clerk at a meeting of the Johnson
> County commissioners  court on  December  8,
> 1986 asked  the  commissioners  to  consider
> reimbursing him for the audit in view of his
> acquittal and in view of the many  recommen-
> dations  made  by   the  independent  auditor

resulting in improvements in internal financial controls in the office of the Johnson county clerk's office.

Additional factual information furnished by you reflects that <u>there was no representation by the county clerk or anyone else that the county was to be responsible for the audit</u> and <u>there was no knowing acceptance of benefits by the county</u>.

At the time of the acts in question, article 1641, V.T.C.S. (codified by the 70th Legislature as section 115.031 of the Local Government Code), provided in pertinent part:

> <u>Any Commissioners Court, when in its judgment an imperative public necessity exists therefor, shall have authority to employ a disinterested, competent and expert public accountant</u> to audit all or any part of the books, records, or accounts of the county; <u>or of any district, county or precinct officers</u>, agents, or employees, including auditors of the counties, and all governmental units of the county, hospitals, farms, and other institutions of the county kept and maintained at public expense, as well as for all matters relating to or affecting the fiscal affairs of the county. The resolution providing for such audit shall recite the reasons and necessity existing therefor such as that in the judgment of said court there exists official misconduct, willful omission or negligence in records and reports, misapplication, conversion or retention of public funds, failure in keeping accounts, making reports and accounting for public funds by any officer, agent or employee. . . . (Emphasis added.)

Article 1641 further provides the manner for giving notice of such resolution and its adoption by the commissioners court. It also requires that any contract entered into by the court for such an audit shall be made in accordance with the statutes applicable to the letting of contracts by the court.

Article 1641 is explicit in vesting authority to contract for an audit solely in the commissioners court. Moreover, article 2351(10), V.T.C.S. (codified by the 70th Legislature as section 115.031 of the Local Government Code), provided at the time in question that the commissioners court shall audit and settle all accounts against the county and direct their payment. See Attorney General Opinion JM-725 (1987). Under the scenario you have provided, the commissioners court did not enter into the contract for the independent audit of the county clerk. Clearly, there was no express contract upon which the county is liable for payment of the audit.

Under certain circumstances, a county or city can be held liable for benefits under a contract which is not made in conformity with the constitution, state statute or city charter. In Harris County v. Emmite, 554 S.W.2d 203 (Tex. Civ. App. - Houston [1st Dist.] 1977, writ dism'd), the appellate court found that there was "some evidence" which would support a jury finding that the county "knowingly accepted benefits" where the evidence reflected the following:

> Plaintiff and Harris County Commissioners Court entered into two successive written employment contracts providing that plaintiff would perform consultation services for the county's Manpower project for a stipulated number of hours at a stipulated hourly rate. A third contract was prepared and the plaintiff, in anticipation of its execution, worked an additional 50 hours, but it was not executed by the Commissioners Court and plaintiff was not paid for that work.
>
> . . . .
>
> The record contains several references to the county's knowledge, through its representatives other than Commissioners Court, of plaintiff's additional services. Mr. Jeff Campbell, then director of the Harris County Manpower program, testified that he had asked plaintiff to continue with his work pending the authorization of the third contract, since the program's standard procedure was to pay for these over-runs by making the contracts retroactive. Col. Dittman, liason between Mr. Campbell's

department and the county judge, was informed of the over-run and approved it. . . . Mr. Campbell answered the following question--

Q. Do you think that the over-run work was beneficial to the county?

A. Absolutely.

544 S.W.2d at 204.

The court stated that the following principles of law govern in such circumstances.

'It is the settled law in this State, as established by the decisions of this Court, that where a municipality knowingly receives property or services or an agreement which it had power to enter into as a contract, but which was not legally entered into so as to make it binding as a contract, it will be compelled to pay the reasonable value of the property or services so received, as on an implied contract. In such instances it is not correct to say that the municipality is estopped to deny that the illegal agreement, as such, is a binding contract. The rule correctly stated is that in such instances the municipality is liable on an implied contract to pay the reasonable value of the property or services furnished to and accepted by it. In the instances under discussion the illegal agreement is not enforced as a contract. To the contrary, the illegal agreement as such is not enforced at all. The contract that is enforced is one that the law implies, because justice demands that a municipality shall not be permitted to receive and retain the benefits of an agreement without paying the reasonable value of such benefits.' City of Houston v. Finn, 139 Tex. 111, 161 S.W.2d 776 (1942).

544 S.W.2d at 204-05.

Unlike Emmite, under your factual scenario you state there was never any representation by anyone that the

county was to be liable for the audit and there was no knowing acceptance of benefits by the county. It is our opinion that under the foregoing facts the county is not liable under the theory of implied contract for the cost of the audit.

You also ask if the county is authorized to pay for the audit. That which the commissioner's court could authorize in the first instance could be ratified by it at a subsequent date. Wilson v. County of Calhoun, 489 S.W.2d 393, 397 (Tex. Civ. App. - Corpus Christi 1972, writ ref'd n.r.e.). This principle of law was applied in Angelina County v. Kent, 374 S.W.2d 313, 317 (Tex. Civ. App. - Beaumont 1963, no writ), where it was stated:

> The fifth point asserts that since no official action was taken by the Commissioners Court instructing Kent to proceed with the final plans, the Court acts only as a body and through its minutes, Kent was entitled to recover only for the sum of $2,000.00 representing his work on the Hill-Burton Fund application. The answer to this is that what the Commissioners Court could approve in the first instance, it may ratify, and its order and resolution of December 30th, 1958, clearly ratified the work he had done to that time.

This raises the question whether the commissioners court of Johnson County could have entered into a contract for an independent audit of the county clerk under the provisions of article 1641 at the outset. This would require the commissioners court to make a determination of whether in its judgment an imperative public necessity existed for such audit. In addition the commissioners court must comply with the other requirements of article 1641. It is our opinion that the commisioners court may pay for the audit if it chooses to ratify the authorization of such audit in accordance with the requirements of article 1641.

### S U M M A R Y

> Johnson County is not liable to pay for an independent audit of the county clerk of that county which was done at the request of the county clerk. The commissioners court of Johnson County may pay for the audit if

it chooses to do so by ratifying the hiring of the independent audit or in accordance with the requirements of article 1641, V.T.C.S. (now codified as section 115.031 of the Local Government Code).

Very truly yours,

J I M    M A T T O X
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Tom G. Davis
Assistant Attorney General